AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

xxxx Monroe St. , N.W., Apartment x
Washington, DC

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I    BRANDON H. CREECH    being duly sworn depose and say:

I am a(n)   Special Agent, United States Secret Service   and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location)

Residence located at xxxx Monroe street NW Apartment x Washington, DC. This is a 3 story apartment complex with off white painted brick. The front of the building has a peach colored door with an oval glass opening with white trim. There is black lettering on the front of the building with the number xxxx on it. Apartment #x has a white door.

concerning a violation of Title   18   United States Code, Section(s)  § 3146. The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.   ☒ YES   ☐ NO

ANTHONY ALEXIS
Federal Major Crimes Section
(202) 514-9416

Signature of Affiant
BRANDON H. CREECH, SPECIAL AGENT
United States Secret Service

Sworn to before me, and subscribed in my presence

_____       at Washington, D.C.
Date

_____       _____
Name and Title of Judicial Officer              Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| APARTMENT x LOCATED AT ) | |
| xxxx MONROE STREET, ) | Criminal No. 07- |
| WASHINGTON, DC ) | |
| ) | UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Brandon H. Creech, being duly sworn, depose and state the following:

1. I am a Special Agent of the United States Secret Service (USSS), and have been so employed since December 2001. I am presently assigned to the Virginia Investigative Team of the Washington Field Office and investigate matters primarily pertaining to financial crimes including bank fraud, access device fraud, check forgery, counterfeiting, and false identification. My training included the Criminal Investigator Special Agent course at the Federal Law Enforcement Training Center and the Special Agent Training Course at the U.S. Secret Service Rowley Training Center. Since I have been with the USSS I have been an involved with more than thirty investigations and arrests relating to counterfeiting. Prior to my employment with the USSS, I was a Federal Officer with the United States Capitol Police for approximately three and one half years.

2. This affidavit is being submitted in support of a warrant to search the apartment "x" at xxxx Monroe St., N.W., Washington, D.C. as further described in Attachment A, for further evidence in the location of JULIAN CECIL CHRISTIAN, in violation of Title 18, United States Code, Section 3146.

3. This affidavit is based upon my personal knowledge as well as facts discovered by other law enforcement officers through the course of the investigation. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known by the government.

4. In January 2007, I was contacted by an investigator for Mid-Atlantic Region for the Target Stores. The investigator indicated that approximately $5700 in counterfeit $100 bills were spent at Target stores located in Leesburg, Sterling, Fairfax, and Gainesville, Virginia. The counterfeit bills have one of five serial numbers and are missing several identifiers. Each bill appears to be either a washed $5 or a washed $1 bill. In other words, the genuine $5 or $1 bills were bleached and then reprinted as counterfeit $100 bills.

5. As part of the investigation, I retrieved video surveillance tapes of each instance in which the counterfeit $100 bills were used. In each of the tapes, the individual was a black male, approximately 6'1" with a goatee wearing a Yankee ball cap. The individual's face is clearly invisible. It appears to be the same individual in each video. That individual was later identified as JULIAN CHRISTIAN.

6. Based on the aforementioned facts, on February 2, 2007, CHRISTIAN was arrested by the USSS for uttering false obligations in violation of Title 18, United States Code, Section 472 a violation of which carries a maximum penalty of twenty years of incarceration. After appearing before the Honorable T. Rawles Jones, CHRISTIAN was released on a personal recognizance bond, and ordered to appear at all proceedings and report on a regular basis to U.S. Pretrial Services. On March 27, 2007, CHRISTIAN failed to report to Pretrial Services as ordered by the Court. As a result, the Court issued a bench warrant for CHRISTIAN'S arrest.

7. On or about April 4, 2007, CHRISTIAN was indicted on four counts of uttering counterfeit obligations in violation of Title 18, United States Code, Section 472. On April 12, 2007, CHRISTIAN failed to appear for arraignment before the Honorable T.S. Ellis, III. To date, CHRISTIAN has still knowingly failed to appear for his pending counterfeit charge in violation of 18 U.S.C. § 3146(b)(A)(I).

8. Since April 2007, USSS has made attempts to locate CHRISTIAN. On June 13, 2007, information was developed through the course of this investigation leading the USSS to believe that CHRISTIAN frequented the "K Street Lounge," located at xxxx K Street N.W. Washington, D.C. On June 14, 2007, USSS set up surveillance near the K Street Lounge. At approximately 2:00 am, I observed CHRISTIAN in his vehicle, which is a white Infiniti with Maryland tags xxxxxx registered in his name. With the assistance of Washington D.C. Metropolitan Police, a traffic stop was initiated by the USSS. Initially, CHRISTIAN pulled his vehicle to the side of the street. However, CHRISTIAN then fled in his vehicle evading arrest and was not apprehended.

9. On July 2, 2007, I spoke with the assistant manager of the Gramax Towers, xxxx xx[th] Street Silver Spring, MD., where CHRISTIAN resides. The assistant manager advised me that CHRISTIAN moved out of the Gramax Towers on May 1, 2007.

10. On August 28, 2007, information was developed through the course of this investigation leading the USSS to believe that CHRISTIAN was residing with his girlfriend at xxxx Monroe street N.W., Apartment B Washington, D.C. Information was also developed that he was driving a silver Lexus with Virginia tags xxxxxx which belonged to Ms. Qiana Parker, or a black Dodge Charger with Virginia tags xxxxxx. Based on this information, the USSS set up

surveillance at xxxx Monroe Street N.W., Apartment x Washington, D.C.  At approximately 3:24pm, CHRISTIAN was observed leaving the apartment in a silver Lexus by USSS Agents Lee and Adams.  Agents Lee and Adams attempted to stop CHRISTIAN at which time CHRISTIAN attempted to strike Agent Lee and fled in his vehicle evading arrest.

    11.  Continuing on August 28, 2007, USSS agents again attempted to locate CHRISTIAN at xxxx Monroe Street N.W. Apartment x Washington, D.C.  Justice Parker, the tenant's brother, confirmed that CHRISTIAN had been staying at the apartment and allowed USSS agents to search the apartment for CHRISTIAN.  While conducting a search for CHRISTIAN, USSS agents located items in plain view that belonged to CHRISTIAN taken during a previous arrest of CHRISTIAN by the USSS.  These items were later returned to CHRISTIAN before the incident on August 28, 2007.

    12.  Continuing on August 28, 2007, I spoke with Qiana Parker, a person known to be CHRISTIAN'S girlfriend and a tenant at xxxx Monroe Street N.W., Apartment x Washington, D.C.  Ms. Parker stated that CHRISTIAN had been staying at xxxx Monroe Street N.W. Apartment x Washington, D.C. and that she had loaned him her silver Lexus automobile.  Based on my training and experience people who are evading law enforcement authorities routinely keep personal and financial records and documents on their person or the places they temporarily reside that relate to expenditures, receipts, checks, ATM and bank receipts that are evidence of flight and provide further evidence of other locations where the person may stay or visit.

    13.  Based on the foregoing, I have probable cause to believe that Julian Cecil Christian did stay at xxxx Monroe street NW Apartment x Washington, DC  in further violation of Title

18, United States Code, Section 3146, and evidence of his whereabouts may be located within the residence, as further described in Attachment A.

_____
Brandon H. Creech, Special Agent
United States Secret Service

Sworn to and subscribed before me this \_\_\_\_ day of August 2007.

_____
United States Magistrate Judge

ATTACHMENT A
Property to be Searched


1. Residence located at xxxx Monroe street NW Apartment x Washington, DC.  This is a 3 story apartment complex with off white painted brick.  The front of the building has a peach colored door with an oval glass opening with white trim.  There is black lettering on the front of the building with the number xxxx on it.  Apartment #x has a white door.

ATTACHMENT B
Items to be Seized

Evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. Section 3146 (Violation of Conditions of Pre-Trial Release) including the following:

Books, records, invoices, receipts, records of real estate transactions, notes, ledgers, checks, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment, and/or expenditure of money;

Any and all materials used to produce fraudulent identifications, to include but not limited to card stock, laminate, photographs, identification printers, and digital camera's;

Any and all materials used to evade arrest, to include but not limited to paper, ink, and manufacturing equipment.

Information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes, but is not limited to, diskettes, hard disks, removable cartridges, system RAM, tapes, laser and compact disks, video cassettes, and any other media which is capable of storing magnetic, optical, and/or binary coding;

Electronic devices which are capable of analyzing, creating, displaying, converting, receiving, or transmitting electronic and/or magnetic computer impulses or data.  These devices include, but are not limited to, computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, optical scanners, encryption circuit boards, hard drives, and other computer related electronic devices;

Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components.  The items to be seized could include, but would not be limited to, operating systems, application software, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer hardware or peripherals, either directly or indirectly, via telephone lines, radio signal, or other means of transmission;

Written or printed material which provides instructions or examples concerning the operation of a computer system, computer software, and/or any related device;

Electronic equipment, such as telex machines, facsimile machines, currency counting machines, telephone answering machines, cellular telephones, and related manuals used to generate, transfer, record, and/or store financial transaction information.  Additionally, computer software, tapes, disks, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment; United States currency, precious metals, jewelry, and

financial instruments, including stocks and bonds;

Photographs, including still photos, negatives, video tapes, films, undeveloped film, slides, and the contents therein, in particular photographs of co-conspirators and assets.

Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, financial institutions, and other individuals or businesses with whom a financial relationship exists;

Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase, or lease agreements, and keys;

To open any and all safes, locked boxes, and receptacles.